The second case is 23-0257. In re Rendelman, Ms. Schechinger. Good morning, your honors, and may it please the court. My name is Caroline Schechinger, and I represent the movement in this case, Mr. Scott Rendelman. The only question before this court is whether the Supreme Court's recognition of a mens rea element for a true threat crime is a new rule of constitutional law that is retroactively applicable. The government concedes that it is. Instead, the government asks the court to reach beyond the gatekeeping requirements and deny Mr. Rendelman's authorization motion to file a successive petition by resolving disputed questions of fact. Your honors, that would create a new gatekeeping requirement that Congress never stated, and this court's case is foreclosed. Not only that, the government asks you to leap to the conclusion that the counterman error had no difference in Mr. Rendelman's case, an unprecedented inquiry at this gatekeeping stage, even though because of the trial court's rulings, Mr. Rendelman never had the opportunity to take the stand and testify about his mental state and introduce his psychological evaluations into evidence. And even though the prosecution stressed over and over during its closing arguments that Mr. Rendelman's mental state was irrelevant, the court should grant Mr. Rendelman's authorization motion and allow the district court to decide in the first instance on a full record whether the counterman error had an impact on Mr. Rendelman's case. Sorry to interrupt. Counsel, do you see any ground on which a court of appeals could sort of go past a bit beyond the gatekeeping function that you, I think, accurately described and refuse to grant a COA on a case that's just so patently without merit? Is there any scenario where you think that's possible? Yes, Chief Judge Diaz. This court has held that there is one circumstance where it can do that, and that would be where the claim is, quote, plainly barred as a matter of law. That's the standard this court articulated in the Vassal case at pages 270 to 271 of the opinion. And in other words, the standard is sometimes there's a legal claim that faces such an insurmountable legal hurdle that it would make no sense to authorize it. It was plainly barred as a matter of law. In Vassal, it was because the movement simply waited too long to file it. There was no dispute at all that the movement did not comply with Congress's statute of limitations. And the court went to great lengths to emphasize that it was not resolving any disputed questions of, quote, fact. It was resolving a narrow legal issue. Other times this court has done so, Graham would be, sorry, Hubbard would be an example, Hubbard as well, Irby as well, would be where the new rule of law that the claimant invokes does not actually apply to his case as a matter of black and white, clean rule of law. Do you think that plausibility has anything to do with this analysis? No, Your Honor, I don't think so. And I think the court can look directly to the Williams decision where it decided this issue for the very first time. And it interpreted the statutory phrase prima facie showing in 2244B3C. And it held, consistent with every other circuit to consider the question, that it refers only to whether it is, quote, reasonably likely that the movement satisfies the gatekeeping requirements. And here, the government concedes that those gatekeeping requirements are met. But to the extent that some of our subsequent cases have suggested a plausibility requirement, you think that that's just inconsistent with Williams? I think it is inconsistent with Williams. Well, maybe you don't agree that we have suggested that. Well, I think there is tension in this court's cases. I'll grant that. And I think you can look to footnote four of the Graham opinion where this court said there's some tension in this court's cases, but we follow the earliest in time panel decision to the extent there's any conflict. And that's Williams. But I do think — Graham took on Irby directly, didn't it, in that footnote four? Yes. I mean, and that's what you're saying. But it seems to me that Irby is more than a little bit of a tension because Irby is talking about possible merit. And that does go to plausibility, doesn't it? So, I mean, in order to agree with you, we would have to then say that the footnote four in Graham resolves any issues that existed prior between Irby and Williams and that we are now bound by that. I don't think so, Judge Keenan. No? Why not? And that's because in Irby — I'm not saying that's a bad way to go. I'm just saying that, in fact, it might be the correct way to go. But it seems to me that that is your argument because Irby does — it seems to me creates more than tension. Irby quite frankly talks about possible merit, which does suggest plausibility. Certainly, Judge Keenan. I think that you could say that Irby is inconsistent with this Court's cases, as this Court noted in Graham, and you can revert to Williams. But I think that even if you look at Irby, this Court should still grant Mr. Rendleman's authorization motion. And here's why. If you look at that phrase that the government points to in Irby, in the very next sentence, this Court stated that what it was really concerned about was when — it said, it used the phrase, mere citation to a new rule is not enough to satisfy the gatekeeping requirements. And so what Irby was concerned about is the situation where a movement purports to invoke a new rule, but if you look, just as a matter of black and white law, the movement does not actually rely on that new rule. So in Irby, for example, Irby sought to bring a claim based on the Supreme Court's decision in Johnson, invalidating the residual clause of the Armed Career Criminal Act as unconstitutionally vague. And the Court did not allow that claim to go forward because, as Irby put it, this Court's precedence, and also the Supreme Court's precedence, quote, made pellucid that Irby's second-degree murder conviction counted as a crime of violence, or rather a violent felony, under the force clause. So what you're really saying is the possible merit language in Irby had nothing to do with its analysis, that its analysis was that it was precluded as a matter of law by virtue of the determination whether second-degree retaliatory murder is a crime of violence. Absolutely, Judge Keenan. And I think that your opinion in the Winston case also reached the very same conclusion. The government there tried to argue that whether the movement would be successful on the claim should bear on the merits, and should bear on whether the Court should accept the gatekeeping petition. And this Court, Justice Keenan, you wrote the opinion, said not at all. That is not part of the gatekeeping inquiry, and that is an issue that the government should hash out in its briefing with the movement before the district court. I think there are good reasons for all of this. If you take a step back and you look at Congress's statutory scheme here, for one, under Section 2255H2, which is the provision at issue here, Congress set forth three discrete, readily assessed criteria. Is there a new rule? Is it retroactively applicable? Could the movement have brought the claim before? And you can compare that, Your Honors, to subsection H1, which is about the authorization of an actual innocence claim based on newly discovered evidence. In subsection H2, the provision here, nothing in that inquiry remotely even hints at any consideration of the facts underlying the movement's claim. By contrast, in subsection H1, Congress used the words clear and convincing evidence. We have to presume that Congress meant what it said when it contemplated a merits type analysis as part of the actual innocence inquiry, but not as part of the authorization of a new rule of law claim. Sometimes we've referred to it as, this question as whether it would be pointless or frivolous to send it to the district court. I know you're drawing a distinction, which I think is evident in our application of the statute, between something being foreclosed as a matter of law versus requiring a merits inquiry. But imagine in this case, I mean, here you're saying a harmlessness analysis doesn't arise to that standard. But imagine here that he didn't get proper jury instructions about subjective intent, but he did actually, you know, there are statements on the record from the defendant saying, I knew that this was threatening and I intended for it to be threatening. So there is instructional error. The counterman knew a change in the law clearly applies to his case, but we can see in black and white that he has already admitted to that element, even though the jury was not asked to find it, or the judge, the fact finder, wasn't asked to find it. Would that be something that we still send back to the district court, or can we say that this satisfies the gatekeeping requirement, but it would be frivolous to send it back? I would submit that those facts are not at issue here, but just even answering your question directly, Judge Rushing, if it was a matter of undisputed fact, the defendant got up and testified that he intended for the statements to be threatening, and the court could simply look to that undisputed question of fact, then yes, possibly, you could hold that the claim would be plainly barred as a matter of law. Well, how's that? I mean, the analysis is still harmlessness. It's still the Brecht, you know, did it have a substantial and injurious effect? But it's just, we're just changing the evidence. We're just changing how sure we are that harmlessness is satisfied. Well, just to go back to the conversation that I was having with Judge Keenan, I don't think it's appropriate to go down this road at all, given this court's decision in Williams and Graham. And I think the questions that you're asking, Judge Rushing, just go to the factual difficulties that can be presented in any case. There's a reason that the substantial and injurious effect standard applies not at the gatekeeping stage, but when a court of appeals and then the district court is reviewing the actual merits of the claim. And I think it's really important to remember that there are actually two gates here. Congress intended the court of appeals to be the first gate to conduct a preliminary analysis. And that's evident in the statutory phrase prima facie showing. Then Congress also provided in Section 2244B-4 that the district court is supposed to conduct a more in-depth inquiry. It's not bound by the court of appeals determination. And in fact, the district court can deny the authorization motion based on the movement's inability to satisfy the gatekeeping requirements. Another key point I would mention here is that under Section 2255H-B, the district court is required to hold an evidentiary hearing unless the existing record, quote, conclusively shows that the movement is not entitled to relief. And so the Tenth Circuit put this really elegantly in Ochoa, when it explained that all of this comports with the respective roles that trial courts and appellate courts play in our institutional system. Trial courts gather facts. They find evidence. That's why Congress has that requirement of conducting an evidentiary hearing. By contrast here, the crux of this case is the evidence that never made it into the record. And I want to highlight that at every juncture of this case, Mr. Rendleman tried to introduce evidence of his mental state. But the trial court, applying then-correct law, precluded Mr. Rendleman from doing so. In fact, Mr. Rendleman rescinded his decision to testify in his own defense, and that's at JA 48-52, after Mr. Rendleman moved to dismiss the indictment on the basis that the government did not show a, quote, true threat. And the district court reiterated, once again, that a defendant's subjective mens rea was irrelevant. So Mr. Rendleman did not take the stand. In addition- I'll ask you a question about that, the mens rea issue. Judge Rushing gave you a hypothetical that had a set of facts which seemed pretty clear on their face to suggest that the mens rea requirement would have been met. But the government's position here is that it wasn't necessary that Mr. Rendleman have any specific intent. It was only necessary that he consciously disregarded a substantial risk that his communications could be viewed by others as threatening violence. Does that somehow alter the calculus with regard to the import of the mental health evidence? No, it does not. And that's because whether a defendant consciously disregarded a substantial risk is a standard teeming with fact questions that I think Mr. Rendleman's psychological evaluations would bear on. And so I don't think that just because there's not a specific intent requirement, that means that Mr. Rendleman does not prevail. But as Judge Keenan mentioned earlier in the discussion, I think that we really should stop with the gatekeeping requirements themselves. And I'd just like to briefly conclude, Your Honors, by emphasizing that the government hasn't pointed you to a single case remotely like this one, where it was conceded that the Supreme Court established a constitutional element of a crime, a brand new element. And it was also conceded that that new rule applied to the Movens case, and yet the Court of Appeals denied authorization after closely parsing the facts. The government's silence is telling, and the Court, and Mr. Rendleman asks that you respectfully grant his motion. Thank you. Thank you, Counsel. Mr. Mettinger, welcome back. Round two. May it please the Court, Your Honors. My name is Jason Mettinger, and I'm here on behalf of the United States. So, Your Honors, the government submits that the Supreme Court's decision in Counterman v. Colorado is retroactively applicable on collateral review because it is a substantive rule that does narrow the scope of 876C. Nevertheless, we do ask this Court to deny Mr. Rendleman's request to file a successive habeas petition because he simply has not averred a plausible claim to relief. And, Your Honors, if I may, I'd like to start with that plausibility claim, because that works into some questions that Chief Judge Diaz and Judge Keenan asked about essentially, you know, should we even consider plausibility here? The government's view is that we should, and you can. And you can do that because Irby did it. You can do that because Inouye Thomas did it. And you can do it because a number of cases, Hubbard, Thomas. What about Graham? It seems to me that was kind of the elephant in the room in your brief. There was no discussion of Graham in footnote 4, and Graham was an obvious effort to resolve these conflicting principles. And why didn't you deal with Graham? Well, so apologies, Your Honor, if we didn't, but I'll take the opportunity to do so now. In our view, Graham didn't close the door to this line of inquiry, and it couldn't. And the reason it couldn't is because you have to look at what 2244 is. It is a permissive scheme. So this court may grant a 2255 successive petition, but it need not. And so this court has expounded upon its discretion. What can we consider in this construct? And it said we're not limited just to 2255H's stringent requirements. You can go beyond that. And the case that I think speaks the best to that is In re Phillips. This is at 879F3RD542. It says surely this gatekeeping function in 2255H is necessary. You got to do that first. But it's not necessarily sufficient. And so this court can consider other considerations. This is what this court said in Phillips. And so respectfully, I think Graham indicated what we're considering on 2255H, that, yes, this gatekeeping function considers whether they've satisfied that first standard, whether it's a new rule. But the Phillips case, the Irby case, the Thomas case, it says this court is empowered in its overall gatekeeping function to consider other considerations, and that includes plausibility. And so this court has said, you know, we need not blind ourselves to reality. That was In re Thomas. We should not engage in an exercise in futility. That's In re Vassell. And then again in Phillips it said it's sufficient but not necessary but not sufficient. So this court is empowered to go beyond just 2255H. That's our argument, and I think the case law bears that out. But I also think that's a good result. Well, let me ask you, the question that I asked counsel in the prior case, so you're writing the opinion of the court that says that a degree of plausibility analysis is permissible under what circumstances? How would you confine an opinion like that? I mean, it looks like Graham in footnote four was really trying to shut the door on what you're advocating now. And so how do you open the door back up again when you're writing this? It seems to me what you're doing is emphasizing the end point, and you're saying any reasonable person would get to this result, so you should. But how do you get there? How would you write that? How would you articulate that? Because it seems to me you haven't really given us any guideposts. Right. So I think in all of these cases, especially this one, we're going to have a fact-specific inquiry because you see what the new rule is. It's not always going to be like Vassil where it's a clear demarcation of it's barred by the one-year bar. Here I will admit that this is a little different. But I think you can look at these. We'd have to make a factual finding then? Is that what you're saying, in order to reject a petition that otherwise on its face meets the requirements of the statute? Well, so it meets the first parts, you know, again. But our view is it has to meet this plausibility standard too, and that's a standard that's going to be driven by the facts. And so here the question is, as Chief Judge Diaz put it, we're now in this counterman world. And can we say, based on what we have in the record, that Mr. Rendleman was at the very least reckless to the idea that the hearers of his threats were going to interpret them as such? And we don't really have to get into a lot of machinations there, because he says himself, these are threats. He says it in the record. He says it as an opening statement. He says it in the letters themselves, that these threats will continue until I'm released. That is exactly what he says. He is saying they're threats. Now, there's a second. What are you saying, then, the opinion would say, as a matter of law, he consciously disregarded the likelihood that these threats would be taken seriously? Yes. So the court could rule for the government by saying just that. But I think you could go even further and say it's not just even the recklessness standard. He has met the intentional standard. He has said himself in the record, I am intending these as threats. Now, there's a second level to that, and I think it gets to the point my colleague mentioned about mental health reports and things like that. What he really wanted to get in was the idea that he was doing this for another purpose. He admits he was making threats. He was doing that purposefully. But he had another purpose for doing it. He was doing it to show a protest. And, Your Honors, in our view, that is not relevant to this new counterman standard. Once he admits that I'm making a threat, it's game over. And it's game over because that's all we need to meet under counterman. And if I could give you just a quick example, it's like a bank robber, right, that says, I'm robbing the banks, but I'm doing it because I want to get food to feed my family. The law is not concerned about that second part that I'm doing it to feed my family. The law is concerned that he's intentionally robbing banks. And so here Mr. Rendleman is saying, I am making these threats. And, yes, he's doing it for this protest purpose or what have you, but these are threats. And so I think we're well past counterman here. The record just shows it indisputably. So why would we send it back? But even if we are in this reckless world, even if that's just the standard we meet and we didn't have those admissions from Mr. Rendleman, we still get there. And we still get there because of the language of these letters, which I think Judge Russing was adverting to, when they say, I will take my axe and chop you up to pieces. There is no world in which that is not reckless to the idea that the hearer is going to see that as a threat. You know, let's look back at counterman, the things that counterman was struggling with. This idea of, like, well, I'll kill you if you don't, you know, show up within five minutes and make me wait. You know, euphemistic phrases. We are light years from that. The other thing we have to do. I have a question about the record and whether or not the record could be expanded to include other evidence of mental health evidence, because you made the point that it appeared the only thing that Mr. Rendleman was interested in alleging was that this was a protest and he would continue to do it. But your colleague on the other side suggested that there are other mental health issues at play here. Do you think the record is limited? Could they not present other evidence of mental health issues that might negate the mens rea element here? So they might, but, again, you know, our view is they're not going to get anywhere close. It doesn't matter what they put in. Well, that's your view, but that, you know. I guess what I would just say, Your Honor, is, you know, he has said himself on the record, I am going to send these threatening letters, he's recognizing and admitting that they're threats, I'm going to keep threatening you until I'm released. Under Counterman. I suggest that there's something seriously wrong with him as a matter of his mental health. So maybe, Your Honor, but, again, I think that's different from Counterman, that's getting into sort of competency to stand trial and things of that nature. Well, it may also get into the issue of intent, right? So I don't think so. Again, if you look at just the standard that Counterman enunciated, again, all he has to do is be reckless to the idea that someone hearing that might consider that a threat. And we're there. You know, my question piggybacking on Chief Judge Diaz, though, is what's the rush here? I mean, this case may well be a giant loser for Mr. Rendleman when he goes back to the district court, but where there is a factual component as to his intent, why would we rush here and just stamp it as case closed when the district court's very capable of looking at the extreme statements that were made and then going on to make factual findings regarding what he has shown regarding his intent and lack of conscious disregard, if possible? Why would we hurry to shut the door here? So, Your Honor, you're not wrong about that. The district court certainly could handle this, and we respectfully submit it would handle it in short order. So there is no rush. But, again, I think there is a plausibility standard. This Court's gatekeeping function, I think, has to mean something, and it has to mean that, you know, as this Court has said, we're not going to engage in futility. And if this Court thinks we're not in futile land, we're much closer, certainly the result then would be we're going to send it to the district court. No question there. But in the government's view, we are so far removed from this. We are in futility land in terms of what he has said. And, again, if the court disagrees with it, the district court can decide it in the first instance, and that's fine. But we think on this record it is pollucedly clear what Mr. Rendleman was doing because it came out of his own mouth. He said, I'm threatening people. This is what I'm doing, and I'm doing it for these reasons. So we just think that there is no daylight there. Counterman at the end of the day just helps him absolutely nothing. There certainly are cases maybe where counterman could help defendants who have charged with this charge, but this respectfully is not that case. And we have the record here. We know what he said. We know the writers, I think, speak for themselves. So that's the government's position. The other thing I'll just point out real briefly back to the plausibility standpoint, I do think my colleague does admit and has admitted here, but also in the reply brief, that certainly this court can wrestle with these issues. There's lots of cases that say we can at least take a cursory glance at the merits. So I think the court can do that here. Again, the government's view is the court is empowered, and the court is empowered to look at this claim and see if it meets this plausibility standard. We respectfully submit it does not. And so that's our basis for saying that we respectfully ask the court to deny the petition here. Thank you, Mr. Ettinger. Thank you, Your Honor. I just want to start, Your Honors, by saying a few words about the facts. So I think everyone is in agreement that the standard here is whether it is, quote, reasonably likely that Mr. Rendleman satisfies the gatekeeping requirements. He does. I think you could write your opinion in those terms. Even if the court were to take a, quote, cursory glance at the merits, which some of its opinions have used that language, you would say that Mr. Rendleman's claim is not, quote, plainly barred as a matter of law. That ends there, and the court should grant Mr. Rendleman's motion and allow the district court to conduct the harmlessness standard. A few words about the facts, Your Honor. The government just ended by saying that you can just look to the letters themselves, and that will tell you everything you need to know. Counterman itself rejected that argument explicitly. The statements in Counterman that the defendant made, he made them to a no contact with, no familiarity, suggested that he was stalking her, and he said things like, you must die. Staying in cyberspace will kill you. The only evidence that the government introduced at trial were those letters. The Supreme Court said that was inappropriate. It reversed because it held that the First Amendment requires the government to prove a mens rea element. And the Supreme Court acknowledged that there will be some circumstances where the government, quote, cannot prove what the defendant thought. And the Supreme Court said that's part of the cost-benefit analysis here. We need to have sufficient breathing room for First Amendment freedoms. I think, Judge Diaz, as you were pointing to, there are psychological evaluations in the record, or that warrant in the record, rather, because Mr. Rendleman never had the opportunity to introduce them. And I would just point to the government's own statements. This was at the sentencing hearing at JA 139. The government called Mr. Rendleman an enigma, a conundrum, inexplicable on so many levels. This is a case where the evidence that never made it into the record is really telling, Your Honors, and you should allow the district court to consider that evidence in light of the evidence as a whole. We respectfully request that you grant Mr. Rendleman's motion. Thank you, Ms. Schechinger. Ms. Schechinger, I note that you're court-appointed. On behalf of my colleagues and the entire court, I want to thank you for taking on this case. Mr. Rendleman's position was ably presented here today, and we're grateful to you for that, and also appreciate Mr. Mettinger's able representation of the United States. We'll come down and greet both of you and move on to our final case.
judges: Albert Diaz, Allison J. Rushing, Barbara Milano Keenan